Timothy W. Brown (*Pro Hac Vice*)
**THE BROWN LAW FIRM, P.C.**
240 Townsend Square
Oyster Bay, New York 11771
Telephone: (516) 922-5427
Fax: (516) 344-6204
Email: tbrown@thebrownlawfirm.net

Robert C. Moest, Of Counsel, SBN 62166
**THE BROWN LAW FIRM, P.C.**
2530 Wilshire Boulevard, Second Floor
Santa Monica, California 90403
Telephone: (310) 915-6628
Fax: (310) 915-9897
Email: RMoest@aol.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHELE OGLINA, DERIVATIVELY AND ON BEHALF OF AMPIO PHARMACEUTICALS, INC., <br><br>Plaintiff,<br><br>v.<br><br>MICHAEL MACALUSO, DAVID BAROR, PHILIP H. COELHO, RICHARD B. GILES, DAVID R. STEVENS, VAUGHAN L. CLIFT, MARK D. MCGREGOR, AND GREGORY A. GOULD,<br><br>Defendants,<br><br>And<br><br>AMPIO PHARMACEUTICALS, INC.,<br><br>Nominal Defendant. | Case No. 2:15-cv-5970-TJH-PJW<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

**TABLE OF CONTENTS**

I. INTRODUCTION ......................................... **Error! Bookmark not defined.**

II. PROCEDURAL HISTORY OF THE DERIVATIVE MATTERS AND THE PARTIES' SETTLEMENT NEGOTIATIONS ....................................... 2

III. THE SETTLEMENT ................................................................................. 3

IV. ARGUMENT ............................................................................................ 4

    A. The Role of the Court in the Approval of a Derivative Settlement ...... 4

    B. The Court Should Preliminarily Approve the Settlement and Consider Final Approval After Notice is Provided to Ampio Shareholders ........................................................................................ 6

V. NOTICE ................................................................................................... 10

VI. SCHEDULING OF EVENTS ..................... **Error! Bookmark not defined.**1

VII. CONCLUSION ......................................... **Error! Bookmark not defined.**2

# **TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

*Carlough v. Amchem Prods., Inc.*,
   158 F.R.D. 314 (E.D. Pa. 1993) ................................................................. 11

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ......................................................... 4

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ................... 5

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .............................................................................. 9, 10

*In re Apollo Group, Inc. Sec. Litig.*,
   No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) ........................................................................................................ 8

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ......................................................................... 4

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ...................................................................... 7

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002) ................................................................. 10

*In re McKesson HBOC, Inc. ERISA Litig.*,
   391 F. Supp. 2d 844 (N.D. Cal. 2005) ...................................................... 10

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................ 4

*In re Paypal Litig.*,
   No. C-02-1227-JF PVT, 2004 WL 2445244 (N.D. Cal. Oct. 13, 2004) ........... 10

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) .............................................................. 10

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ............................................................. *passim*

*Shlensky v. Dorsey*,
   574 F.2d 131 (3d Cir. 1978) .................................................................................5

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ..................................................................................5

**STATUTES**

Fed. R. Civ. P. 23 ........................................................................................................4, 5

**OTHER AUTHORITIES**

Alba Conte and Herbert B. Newberg, 4 Newberg on Class Actions (4th Ed.
   2002) .....................................................................................................................5

Manual for Complex Litigation §30.41 (3d ed. 1995) ..........................................6, 11

Plaintiff Michele Oglina ("Plaintiff Oglina"),[1] by and through her undersigned counsel, hereby submits this memorandum of points and authorities in support of her unopposed motion for preliminary approval of the settlement (the "Settlement") of the above-captioned shareholder derivative action (the "*Oglina* Action") brought on behalf of Ampio Pharmaceuticals, Inc. ("Ampio" or the "Company").[2]

## I. INTRODUCTION

Plaintiff Oglina is pleased to inform the Court that after extensive, arm's-length negotiations, the Parties to the Derivative Matters have agreed to the Settlement, which fully, finally, and forever resolves, discharges, and settles the Released Claims, while providing substantial benefits to Ampio and Ampio Shareholders. As a result of the initiation, prosecution, pendency and proposed Settlement of the *Oglina* Action and other Derivative Matters, Ampio will enact the valuable corporate governance reforms, which are attached as Exhibit A to the Stipulation (the "Reforms"). In addition, in recognition of the initiation, prosecution, pendency, and settlement of the Derivative Matters, which resulted in the Reforms, Defendants agree to direct their insurer to pay Plaintiffs' Counsel's agreed-to Fee and Expense Award of $385,000 (the "Fee and Expense Award"). Stip at Section V.

The Settlement constitutes an appropriate resolution of litigation of substantial complexity and is within the range of possible approval, thereby satisfying the test courts typically employ in reviewing a settlement for preliminary approval. Accordingly, Plaintiff Oglina respectfully requests the Court to: (i) preliminarily approve the Settlement set forth in the Stipulation; (ii) approve the form of the

---

[1] All capitalized terms not defined herein shall have the same definitions as set forth in the Stipulation of Settlement dated April 14, 2017 (the "Stipulation") (attached as Exhibit 1 to this Motion). Citations to the Stipulation shall appear in the following format: Stip at __.

[2] Pursuant to the Stipulation, this Settlement also intends to settle claims raised in the Shareholder Demand Letter and in the *Loyd* Action. Accordingly, within four (4) business days after the Final Judgment becomes Final, Plaintiff Loyd shall file the necessary documents to achieve the voluntary dismissal of the *Loyd* Action. Stip at 9-10. Collectively, the *Oglina* Action, *Loyd* Action, and Shareholder Demand Letter shall be referred to herein as the "Derivative Matters."

1

Notice, and direct the publication of the Notice as contemplated by the Stipulation; and (iii) schedule a hearing to entertain any objections by Ampio Shareholders and to consider final approval of the Settlement (the "Final Hearing").

## II. PROCEDURAL HISTORY OF THE DERIVATIVE MATTERS AND THE PARTIES' SETTLEMENT NEGOTIATIONS

On August 6, 2015, Plaintiff Oglina commenced the *Oglina* Action in this Court, which asserted claims derivatively on behalf of Ampio. Stip at 1. On September 25, 2015, Plaintiff Patrick Loyd ("Plaintiff Loyd") commenced the *Loyd* Action against the Defendants in Colorado State Court, which likewise asserted claims derivatively on behalf of Ampio related to the same facts as those alleged in the *Oglina* Action. *Id.* Additionally, on May 8, 2015, Demand Shareholder Albert Halegoua ("Demand Shareholder Halegoua" or the "Demand Shareholder") issued the Shareholder Demand Letter, which made certain demands upon the Defendants and threatened to bring suit derivatively on behalf of Ampio regarding the same set of factual circumstances that led to the filing of the *Oglina* Action and the *Loyd* Action. *Id.*

In particular, the complaints in the Actions and the Shareholder Demand Letter generally alleged or asserted that the Defendants breached their fiduciary duties, made or permitted the making of material false statements or omissions, and committed other violations of state law with respect to the STEP clinical trial for Ampion – a biologic that Ampio was developing to treat osteoarthritis of the knee. Stip at 2. The complaint in the *Oglina* Action alleged counts for breach of fiduciary duty, abuse of control, gross mismanagement and unjust enrichment. *Id.* The complaint in the *Loyd* Action alleged counts for breach of fiduciary duty, gross mismanagement and unjust enrichment. *Id.* The Shareholder Demand Letter, among other things, demanded that Ampio's board of directors commence a civil action against Defendants to redress their alleged breach of fiduciary duty. *Id.*

On September 22, 2015, the Court entered an order staying the *Oglina* Action until the earlier of: (a) thirty days after written notice of termination had been

2

provided by any party in the action to all other parties in the action; (b) the related securities class action matters *Shiva Stein, et al. v. Ampio Pharmaceuticals,Inc., et al.*, Case No. 2:15-cv-3640 (C.D. Cal.) and *Guidano Napoli, et al. v. Ampio Pharmaceuticals, Inc., et al.*, Case No. 2:15-cv-3474 (C.D. Cal.) (collectively, the "Securities Class Action") were dismissed with prejudice; or (c) any defendant in the Securities Class Action filed an answer. *Id.* On November 17, 2015, the Colorado State Court entered an order staying the *Loyd* Action under these same terms. *Id.* By letter dated October 17, 2015, the Demand Shareholder agreed to defer action with respect to the Shareholder Demand Letter under the same terms as well. *Id.*

On November 8, 2016, counsel for all Parties, including Plaintiff Loyd and Demand Shareholder Halegoua, attended an in-person all-day mediation session before Michele Yoshida of Phillips ADR (the "Mediator"). *Id.* The mediation was unsuccessful in producing a resolution of the Derivative Matters. Over the course of several weeks following the in-person mediation, however, with the substantial continued help of the Mediator, the Parties negotiated the corporate governance Reforms to be instituted by Ampio and other terms of the Settlement set forth in the Stipulation, except for the award of attorneys' fees and expenses to Plaintiffs' Counsel. *Id.* On December 19, 2016, the Parties hereto reached an agreement in principle to those terms of the settlement of the Derivative Matters. Stip at 3.

After reaching an agreement on the corporate governance Reforms, the Parties negotiated at arm's length the Fee and Expense Award to be paid to Plaintiffs' Counsel. *Id.* Following extensive discussions with the aid of the Mediator, on March 24, 2017, the Parties agreed to a "Mediator's proposal" made by the Mediator with respect to attorneys' fees and reimbursement of expenses to be paid to Plaintiffs' Counsel, subject to the approval of the Court. *Id.*

III. THE SETTLEMENT

As discussed above, the Parties, through their respective, highly experienced counsel and with the substantial assistance of the Mediator, have engaged in good-

faith and protracted arm's-length negotiations to resolve the Derivative Matters. Their diligence and extensive discussions culminated in the Stipulation, which fully sets forth the terms and conditions of the Settlement. As discussed above, as a result of the initiation, prosecution, pendency, and proposed Settlement of the Derivative Matters, Ampio's board of directors will adopt by resolution, or other means as appropriate, the corporate governance reforms set forth in Exhibit A to the Stipulation. Most notably, the Reforms call for the Company to create a "Disclosure Committee," which is designed, *inter alia*, to assist and report to the Company's chief executive officer and chief financial officer in establishing, implementing, maintaining and evaluating controls or other procedures that are designed to ensure that the Company disseminates accurate and truthful statements in its public disclosures. *See* Stip, Exhibit A. The Reforms, thus, directly address the allegations made in the Derivative Matters that the Defendants made and/or caused the Company to make false and misleading statements to the investing public. The Reforms also include mandatory training of Company employees and directors, and improvements to the Company's system for reporting illegal or unethical behavior. *Id.*

## IV.   ARGUMENT

### A.   The Role of the Court in the Approval of a Derivative Settlement

There is a strong policy favoring compromises that resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). The "'[s]ettlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable."'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (citations omitted).

Federal Rule of Civil Procedure 23.1 ("Rule 23.1") governs a district court's analysis of the fairness of a settlement of a shareholder derivative action. *In re Pac.*

*Enterprises Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995). Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c).

The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). As Rules 23 and 23.1 of the Federal Rules of Civil Procedure both require court approval for the compromise of class and derivative actions, the factors laid out for determining whether to approve a class action settlement are also applicable to derivative settlements. *See* Alba Conte and Herbert B. Newberg, 4 Newberg on Class Actions § 22:109 (4th Ed. 2002); *see also Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978) ("While in *Girsh v. Jepson* we discussed the necessity of considering such factors in determining the fairness of the settlement of a class action in order to protect the rights of absent members of the class of plaintiffs, it is clear that the same factors are relevant in a shareholder's derivative suit").

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the

agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Id*. (emphasis in original).

### B. The Court Should Preliminarily Approve the Settlement and Consider Final Approval After Notice is Provided to Ampio Shareholders

At the Final Hearing, the Court will have before it detailed papers submitted in support of the Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate and in the best interest of those whose claims will be extinguished. While Plaintiff Oglina (and Plaintiff Loyd and Demand Shareholder Halegoua) believe that the Settlement merits this Court's final approval, at this time Plaintiff Oglina respectfully requests only that the Court grant preliminary approval of the Settlement. To grant preliminary approval, the Court need only conclude that the Settlement of the claims against the Defendants is "within the range of possible approval" to preliminarily approve the Settlement for the purposes of providing notice and holding a future fairness hearing.[3]

---

[3] As the *Manual for Complex Litigation* explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

1   Plaintiff Oglina respectfully submits that this Court may easily find that the
2   Settlement is "within the range of possible approval." As a threshold matter, the
3   Settlement was reached after extensive arm's-length negotiations between and among
4   counsel for the Plaintiffs and the Defendants with the substantial assistance of the
5   Mediator, and provides substantial benefits to the Company and Ampio Shareholders
6   while eliminating the expense, risk, and delay inherent in such complex litigation,
7   including the very real risk of no recovery. Moreover, the Company approved the
8   Settlement only after determining that the Settlement of the Derivative Matters under
9   the terms set forth in the Stipulation, including the institution of the Reforms, benefits
10  the Company. Under these circumstances, Plaintiff Oglina respectfully submits that
11  the Settlement is "within the range of possible approval" and should be preliminarily
12  approved.
13      Further, reference to some of the factors considered by courts in granting final
14  approval of derivative and class action settlements lends support to Plaintiff Oglina's
15  belief that the Settlement should not only be preliminarily approved, *i.e.*, is within the
16  range of possible approval, but also should be finally approved after Notice is
17  provided to Ampio Shareholders. *Officers for Justice*, 688 F.2d at 625. In
18  determining whether a settlement is fair, courts focus on whether the settlement was
19  reached as a result of good faith bargaining at arm's length without collision. *See In*
20  *re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). As discussed above, each
21  element of the Settlement was extensively negotiated between experienced counsel
22  with a firm understanding of the strengths and weaknesses of the claims and defenses
23  asserted, is the product of significant give and take by the Parties, and was reached
24  only after extensive negotiations between counsel for the Plaintiffs, the Demand
25  Shareholder, and the Defendants, all with the substantial assistance of the Mediator.
26      An evaluation of the benefits of a settlement must also be tempered by
27  recognition that any compromise involves concessions on the part of all of the settling
28

*Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995).

parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citations omitted). Although Plaintiffs and the Demand Shareholder believe that the claims asserted in the Derivative Matters were meritorious, liability was by no means a foregone conclusion. Had Plaintiffs and the Demand Shareholder continued to litigate, there was a risk that they would not have been successful at the motion to dismiss stage of their respective actions.

Even if Plaintiffs and/or the Demand Shareholder were successful and survived the motion to dismiss stage, continued litigation would be extremely complex, costly, and of substantial duration. Document discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery conducted. Ampio and the Defendants' expected motions for summary judgment would have to be briefed and argued, and if defeated, then a trial would have to be held. Indeed, significant risks remained in getting past Ampio and the Defendants' anticipated motions for summary judgment and obtaining a favorable judgment after trial. Even if liability were established, the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing Ampio and Ampio Shareholders substantial benefits. *See Officers for Justice*, 688 F.2d at 625.

It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court. For example, in *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court, on a motion for judgment as matter of law, overturned a jury verdict of $277 million in favor of shareholders based on insufficient evidence presented at trial to establish loss causation. Add to these post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex

trial – where witnesses could suddenly become unavailable or the fact-finder could react to the evidence in unforeseen ways – and the benefits of the Settlement become all the more apparent.

Significant weight also should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement. *Officers for Justice*, 688 F.2d at 625. Plaintiffs, the Demand Shareholder, Ampio, and the Defendants have independently considered the Settlement and all agree that it is in the best interests of Ampio and Ampio Shareholders. Stip at 3. Here, Plaintiffs' Counsel has extensive experience in the area of shareholder representative litigation. As a result of extensive experience in these types of cases, Plaintiffs' Counsel has a unique insight into the legal and factual issues presented. In particular, Plaintiffs' Counsel used that expertise and experience to effectively and efficiently prosecute the Derivative Matters and reach an outstanding result for Ampio and Ampio Shareholders.

In addition to the terms of the Settlement being fair, adequate, and reasonable, the negotiated and agreed-to Fee and Expense Award to be paid to Plaintiffs' Counsel is reasonable. In recognition of the initiation, prosecution, pendency, and settlement of the Derivative Matters, which resulted in valuable corporate governance enhancements -- the Reforms, Ampio and Defendants have agreed that Plaintiffs' Counsel be paid a Fee and Expense Award of $385,000 for Plaintiffs' Counsel's attorneys' fees and expenses by the Defendants' insurer. Stip at Section V. Here, counsel for Plaintiffs, the Demand Shareholder, and Ampio and the Defendants negotiated the Fee and Expense Award after the principal terms of the Settlement were reached. Stip at 3. The Fee and Expense Award was agreed-upon only with the substantial assistance of the Mediator, after several more months of negotiations. *Id.* These negotiations resulted in a Fee and Expense Award that is consistent with the benefits conferred upon Ampio and Ampio Shareholders. The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fees issues in these

kinds of cases as the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (where, as here, there is no evidence of collusion and no detriment to the parties, the court should give "substantial weight to a negotiated fee amount.").

Finally, in connection with final approval of the proposed Settlement, Plaintiffs' Counsel will seek Court approval for case contribution awards in the amount of $2,500 each as compensation to Plaintiffs and the Demand Shareholder for their time, effort and service as representative plaintiffs/claimant in the Derivative Matters (the "Service Awards"). The Service Awards shall be deducted from the Fee and Expense Award to the extent approved by the Court. It is well settled that "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 incentive awards); *In re Paypal Litig.*, No. C-02-1227-JF PVT, 2004 WL 2445244, at *1 (N.D. Cal. Oct. 13, 2004) (approving $2,500 incentive awards).[4]

Accordingly, for all of the foregoing reasons, Plaintiff Oglina respectfully submits that preliminary approval of the Settlement should be granted.

## V. NOTICE

Plaintiff Oglina seeks Court approval of the form and manner of the Notice, attached to the Stipulation as Exhibit B-1. The Stipulation provides that Ampio shall cause a copy of the Notice to be filed with the Securities and Exchange Commission (the "SEC") on Form 8-K; with a copy of the full Stipulation attached to

---

[4] Plaintiffs' Counsel only currently seek approval to notify Ampio Shareholders in the Notice of the proposed Service Awards at this time.

the Form 8-K. Stip at 9. The Notice provides information relating to: (i) the Settlement terms; (ii) the date of the Final Hearing; and (iii) the protocol for Ampio Shareholders to follow to comment upon the proposed Settlement.

Rule 23.1 does not require individual notice of a shareholder derivative settlement, as is required for a class action, but rather provides for notice only "in the manner that the court orders," thus affording the Court substantial discretion. Because no individual claims are at stake, and because a direct notice program would be so costly as to swallow up the benefits of most derivative settlements, notice of dismissal of derivative settlements under Rule 23.1 by publication only is appropriate. Thus, the form and manner of the proposed Notice to Ampio Shareholders constitutes the best notice practicable under the circumstances and satisfies the requirements of Rule 23.1, due process, and any other applicable law. *Carlough v. Amchem Prods., Inc.,* 158 F.R.D. 314, 323 (E.D. Pa. 1993) ("notice by publication may be the principal means for informing [shareholders] of their ... rights") (citing *Manual Complex Litigation* (Third), *supra*, §30.211, at 221).

## VI. SCHEDULING OF EVENTS

Plaintiffs' Counsel propose the following schedule for the publication of the proposed Notice, the filing of submissions in support of final approval of the Settlement, the timing regarding any objections by Ampio Shareholders and any response(s) thereto, and the Final Hearing. This schedule is similar to those used and approved by courts in derivative settlements and provides due process to Ampio Shareholders with respect to their rights concerning the Settlement.

11

| Event | Time for Compliance |
|---|---|
| Deadline for filing the Notice on Form 8-K with the SEC | Not later than ten (10) calendar days following the entry of the Preliminary Approval Order |
| Deadline for filing of papers in support of the final approval of Settlement and the Fee and Expense Award | At least twenty-eight (28) calendar days prior to the Final Hearing |
| Deadline for any objections by Ampio shareholders to the Settlement to be filed with the Court | At least twenty-one (21) calendar days prior to the Final Hearing |
| Deadline for filing of any response to objections, if any, by Ampio Shareholders | At least seven (7) calendar days prior to the Final Hearing |
| Final Hearing date | Fifty-five (55) calendar days after entry of the Preliminary Approval Order, or later at the Court's convenience |

## VII. CONCLUSION

Given the benefits the Settlement provides to Ampio and Ampio Shareholders, Plaintiff Oglina respectfully requests the Court to: (i) preliminarily approve the proposed Settlement; (ii) approve the form and manner of the Notice and direct the publication of the Notice; and (iii) schedule the Final Hearing.

Dated: April 14, 2017

Respectfully submitted,
THE BROWN LAW FIRM, P.C.
Timothy W. Brown
Robert C. Moest

By: /s Timothy W. Brown
Timothy W. Brown (*Pro Hac Vice*)

*Counsel for Plaintiff*